Hornblower, C. J.
1. I am of opinion that George Davis was a competent witness.
2. That the loss of the deed from Morrison and wife to Geo. Davis, was sufficiently proved to admit parol evidence of its contents.
3d. That the partition was unlawfully made; it was a void proceeding, and not in accordance with the duties and powers of the commissioners and the directions of the statute upon that subject ; and consequently that Anna Cook and Christiana Speers did not thereby become entitled to hold in severalty, the premises in question. The twelfth section of the act to ascertain the power and authority of the ordinary, &c., (Rev. Laios, 779,) authorizes the Orphans’ Courts of the several counties to appoint commissioners to make partition of lands lying in their respective counties, and the fourteenth section of the same act provides that where a person dies intestate, seized of lands in fee simple, situate in two or more counties, such partition may be made under the direction of the Surrogate General. When, therefore, the land lies partly in one county and partly in another, the heirs at law, if they wish to have one general division, must apply to the Surrogate General, for the appointment of commissioners, but the Orphans’ Court can only appoint commissioners to divide the land situate in the county over which their jurisdiction extends, and such division must be made among all the heirs. The lands lying in Salem, ought therefore to have been divided into six parts, and allotted among all the six heirs. If application was also made to the Orphan’s Court of Cumberland, the commissioners, (even if they happened to be the very same persons,) should in like manner have divided those lands among all the heirs. These proceedings seem to have been a device to super- *523 cede the jurisdiction of the Surrogate General, and to show the absurdity of the attempt, it is only necessary to inquire, what would have been the result, if the Orphans’ Court of one county hasl affirmed, and the other had disaffirmed and vacated the report ?
In this case, the application to the Orphans’ Court of Salem county, was for a partition of all the lands lying in that county, among all the heirs of Abel Cook, and the commissioners by the very terms of their commission, were instructed to make sueh partition, instead of which, they have allotted the whole of the lands lying in that county, to two of the heirs only, referring the other heirs by a memorandum at the foot of their report, to the record of Cumberland county, for their shares of the inheritance. If, therefore, the lessors of the plaintiff, had no other grounds to rest upon, but the matter of partition, they could only recover in this action two undivided sixths of the premises in question, in one sixth of which they would have a fee, and in the other only an estate, during the life of their uncle, George Davis. But,
4th. It appears that Abel Cook died seized, previous to the year 1799 — that in June 1799,- the premises in question were set off to his daughters Anna and Christiana, as their shares of his estate, and that they and those claiming under them, continued in possession for nearly twenty years, and perhaps for more than that period. William Davis, the father of the lessors of the plaintiff, died in possession in 1814, which was fifteen years after the partition. His widow, the mother of the lessors of the plaintiff” continued in possession until she married Smith, which was three or four years after the death of her husband, William Davis. If four years, then the possession had continued nineteen years, under the partition. After her marriage with Smith, he undertook to rebuild the house though he never completed it, nor moved into it; but Mrs. Smith survived her husband William Davis, about ten years, and as t-here was no evidence of any change of possession, or at' least of any adverse possession, it may fairly be presumed, that she died in possession, and consequently that the premises have been possessed under the partE tion, however erroneous that may have been, for at least twenty years. And as the defendant has entirely failed to shew any adverse title either possessory or documentary, I think the verdict ought to stand.
*524 It may be true that there has not been twenty years possession by Anna and Christiana, and those claiming under them, since all the heirs at law of their father Abel Cook, came of age; and if the defendants had shewn any right or title under any of the heirs not barred by the statute, by reason of their minority, they might have set up the disability of those under whom they claimed, in avoidance of the plaintiff’s right to recover on the ground of possession. But the disability that saved from the operation of the statute of limitations, is of a personal character, and can only be set up by parties and those claiming under them. A defendant may shew a title out of the plaintiff; but shewing that a third person might defeat the plaintiffs’ title, if he chose to set up his minority or other disability, is a very different thing. In my opinion, therefore, the plaintiff ought to have judgment.
Ford, J.
Abel Cook died intestate, leaving six children, all daughters, & leaving real estate in the two counties of Salem and Cumberland. The Orphans’ Court of Salem appointed commissioners for dividing the lands in that county, among all the heirs; and the Orphans’ Court- of Cumberland, appointed the same commissioners for dividing the lands in it, among all the heirs. The commissioners acted under both commissions at the same time; but did not pursue the literal directions of either of them; for they assigned all the lands in Salem county, to Christiana Cook and Anna Cook, and thus excluded the four other daughters from any share therein; giving lot No. 5 to Christiana, and lot No. 7, to Anna, which two lots comprised all the lands of the ancestor, in Salem. They also assigned all the lands in Cumberland county, to the four other daughters, thus excluding the two others from ; ny share therein. This partition was confirmed by the Orphans’ Court of the county of Salem on the 1st of June 1799. The heirs made no opposition to this irregular execution of the commission, each one having an equal portion of her father’s estate, as she probably believed, at the time; nor has either of them expressed any discontent with it from that time to the present. It is the defendant who takes exception to the legality of that partition, though he does not claim under the ancestor, or either of his heirs. But the statute makes a partition by commissioners “ as valid and effectual in law, as *525 if the same had been made on writs of partition at the common law,” liev. L. 93, section 8. The record could not be questioned (in any collateral action) of a partition at the common law. Whether this record can be questioned, in this collateral way, under the statute, needs perhaps no present consideration, for Christiana has held lot No. 5, for thirty-eight years, in peaceable possession, under a semblance of legal partition, in severalty ; and Anna, and those under her, for the same length of time; from whence an agreement of all parties, may be presumed, to this partition; and though a parol partition might not be originally good, under the statute of frauds, yet lands holden in severalty, peaceably, for twenty years, under a colorable partition, will amount to evidence of title, under the statute of limitations ; and therefore the plaintiff established Christiana’s title sufficiently to lot No. 5, and Anna’s to lot No. 7, in severalty.
Now, Ruth Watson, (formerly Ruth Davis) and Deborah Davis her sister, the children and heirs at law of William Davis deceased, claim these two lots 5 and 7, as the property of their deceased father at his deatli; and they show it in the following way.
1. Lot No. 5, allotted to Christiana Cook in 1799, was taken into immediate possession, by-her guardian, and transferred on her marriage, to George Davis, her husband; at her death, George Davis the husband, becoming entitled to "it as tenant by the curtesy, for life, conveyed his life estate therein, by deed of January 1810, to William Davis, and delivered to him peaceable possession. At William Davis’s death, it passed into the peaceable possession of his widow and his two only children, Ruth and Deborah, and they remained in possession, till the death of the widow in 1824; so that they showed a claim of uninterrupted and peaceable possession for more than twenty years, in themselves and those under whom they claimed; transmitted down from Christiana Cook to whom it was allotted in 1799. They could maintain an ejectment on this possession, even if they shewed no documentary title whatever; yet they showed one of equal clearness. Their father had a freehold estate in this lot, to continue during the life of George Davis, who is still living, and though an estate per autre vie vests in the administrator of the deceased tenant, Rev. L. 224, sec. 1, yet he takes it in trust *526 for the next of kin after payment of debts; and they may be fairly presumed to hold as next of kin, by his appointment until the contrary be shown.
2. Then as to lot No. 7, which was taken by Anna in severalty, she and her husband Speers transferred the possession of it, to Isaac Morrison • Morrison, to George Davis and George Davis conveyed it in fee to William Davis the father of the lessors, and he having died seized, his widow and children appear to have remained in possession, till her death in 1824, shewing a line of possession, peaceable and unbroken to this lot No. 7, for upwards of 20 years. And as to their documentary title, the parchment deed for this lot, was cut up into patterns, by a neighboring woman, as an old writing of no value, during the minority of the lessors; some of the pieces of which, were produced at the trial, & being identified by George Davis as parts of the deed from Speers and wife to Isaac Morrison, I think sufficient evidence of this deed was given to the jury. Isaac Morrison conveyed the lot by another parchment deed to George Davis; and George Davis testified that he delivered both these parchment deeds to William Davis, at the time he conveyed the lot to him, by the deed of the 5th of June, 1810, produced at the trial. So the jury had sufficient evidence of a documentary title in William Davis, the father of the lessors, independently of twenty years’ possession; and I am of opinion, that the plaintiff is entitled to judgment on the postea, for the whole of the premises.
White, J. concurred. Dayton, J. expressed no opinion.

Judgment for the plaintiff.